Basil P. Autrey v. Commissioner.
Autrey v. Commissioner
Docket No. 73136.
United States Tax Court
T.C. Memo 1962-170; 1962 Tax Ct. Memo LEXIS 140; 21 T.C.M. (CCH) 947; T.C.M. (RIA) 62170; July 18, 1962
*140 Homer F. Benson, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined the following deficiencies in income tax and additions to tax for fraud against petitioner as follows: Additions under
Sec. 293(b),
Year
Deficiency
I.R.C. of 1939
1942
$5,209.32
$2,604.66
1943
6,963.20
5,965.89
1944
7,052.19
4,506.34
1947
6,015.57
3,007.79
1948
5,399.56
2,699.78
Subsequent to the filing of the petition herein petitioner died and there was no appearance on his behalf at the trial. A motion by the respondent for a decision for the deficiencies as determined in the notice of deficiency was granted. The only question for decision is whether the additions to tax for fraud were proper. Findings of Fact Petitioner was a resident of Birmingham, Alabama, and filed his individual income tax returns for the taxable years 1942, 1943, 1944, 1947 and 1948 with the collector of internal revenue for Alabama. During the years involved petitioner was employed as general agent by the American Life Insurance Company, a corporation with its principal office in Birmingham, and hereafter *141 referred to as American Life. Thomas W. Wert was president and Elsie B. Montgomery was vice president of the company. Petitioner received an annual salary, an expense account and a percentage of all premiums on policies of insurance sold by all of the agents representing American Life. In January 1941, petitioner and Elsie Montgomery entered into a joint venture under the name of A & M Agency. The Agency acquired an insurance business in January 1941, known as Union Life Insurance Association, hereafter referred to as Union Life. In 1942, the Agency acquired another insurance business known as Pan National Insurance Company. On September 21, 1942, Pan National was merged with Union Life under the name of Union National Life Association. [1] Prior to 1947, the Agency sold Union National to American Life. [2]
Petitioner kept fairly good records in connection with his insurance business but did not keep adequate records of his income for *142 any of the taxable years in question. On his original and amended returns for 1942, petitioner reported having received income from American Life and Union Life in the respective amounts of $8,062.18 and $2,046.13. He failed to report additional compensation received from the two sources in the respective amounts of $6,656.02 and $12,392.28. His corrected net income for the year was $19,022.13, and not $4,773.99 as reported on the amended return. On his original and two amended returns for 1943, petitioner reported having received income from American Life and Union Life in the respective amounts of $7,938.17 and $15,727.90. He realized additional compensation from the two sources in the respective amounts of $15,930.64 and $13.865.86, which he failed to report. His corrected net income was $29,843.69, and not $18,681.59 as reported on his second amended return. On his original and amended returns for 1944, petitioner reported having received income from American Life and Union Life in the respective amounts of $8,392.40 and $7,943.50. From the aggregate amount of $16,335.90 he deducted traveling expense in the amount of $8,323.90, leaving a net of $8,012 received from the two *143 sources. He received additional compensation of $13,631.25 from American Life and additional compensation of $28,479.51 from Union Life, which amounts petitioner omitted from his returns. His adjusted net income for 1944 was $31,363.63 and the net income reported on the amended return was $18,352.22. [3]
At some undetermined date petitioner acquired and operated the Birmingham Flying Service and businesses related thereto, including sales of aircraft, oil and gasoline, airdrome service and the operation of an airdrome supper club. On his 1947 return, petitioner claimed a loss of $39,500 from the operation of the flying service. He actually realized income from such business of $3,299.01. On his 1947 return, petitioner reported commissions received from American Life in the aggregate amount of $37,628.80. He claimed a deduction for business expenses in the aggregate amount of $19,647.91, leaving $17,980.89 as net commissions received from American Life. During 1947 petitioner's gross income from *144 his insurance businesses was $73,673.03; his adjusted expenses were $37,892.31; and his net income was $35,840.72, of which he failed to report $17,859.83, computed as follows: American Life: Salary
$ 3,000.00
Expense allowance
4,200.00
Commissions: Health and Accident
Dept.
8,817.63
Ordinary Dept.
27,913.50
Industrial Dept.
16,294.02
Total
$60,225.15
Income from A & M Agency
3,952.68
Brokerage fees from W. D. Dobbins [1]
9,495.20
Total insurance business income
$73,673.03
Adjusted insurance business ex-
penses
37,832.31
Net insurance business income
35,840.72
Net insurance business income as
reported
17,980.89
Net insurance business income not
reported
$17,859.83
Petitioner also reported having received dividends from Par Value Loan Company during 1947 in the amount of $179, but he received a total of $374, of which he failed to report $195. Petitioner's 1947 return showed a net loss of $20,751.69. [4] He had a net income of $19,749.40, through an adjustment in the amount of $43,436.45 to the reported net *145 income. On his return for 1948, petitioner reported income from his insurance businesses in the aggregate gross amount of $96,684.12. From such sources he received the following amounts: American Life: Salary
$ 9,000.00
Expense allowance
1,400.00
Commissions: Ordinary Dept.
55,479.82
Industrial Dept.
16,165.94
Health and Accident
Dept.
5,648.93
Total income from Amer-
ican Life
$ 87,694.69
Commissions from A & M Agency
$ 6,793.06
Commissions from Mutual Savings
Life Ins. Co.
286.06
Brokerage fees from W. D. Dobbins
& Son
7,402.87
Total insurance business income
$102,176.68
Total insurance business income
reported
96,634.12
Insurance business income not re-
ported
$ 5,492.56
On his 1948 return., petitioner reported a net loss from his flying service and related businesses in the amount of $35,146.72. He received *146 additional income from such source in the amount of $16,555.43, which he failed to report. For 1948 petitioner realized total net income in the amount of $22,309.78. He reported only $7,965.38, omitting $14,344.40. During each of the taxable years 1942, 1943, 1944, 1947 and 1948, petitioner, with intent to evade tax, failed to keep adequate records in his business activities and failed to report substantial sums of taxable income for each of the taxable years. A part of the deficiency for each of the taxable years 1942, 1943, 1944, 1947 and 1948 is due to fraud with intent to evade tax. Opinion Subsequent to the filing of the petition herein petitioner died. No substitution of any personal representative has been made, and at the trial herein there was no appearance on petitioner's behalf. Nevertheless, the Court still has jurisdiction over the proceeding. Roy R. Yeoman, 25 T.C. 589. At the opening of the trial, respondent moved for the entry of a decision for the deficiencies in income tax as determined in the notice of deficiency, and in absence of any evidence to the contrary, the Court has granted the motion. The only issue for decision is whether the *147 additions to tax for fraud were proper. Respondent produced testimony that showed petitioner failed to keep adequate records from which his taxable income could be computed for any of the taxable years; that he realized substantial income in each of the years which he failed to report, and that statements made by petitioner relating to the income realized and the understatements in reporting income were not true. We believe the evidence sustains our finding, and we so hold, that part of the deficiency for each taxable year in question is due to fraud with intent to evade tax. Decision will be entered for the respondent. Footnotes
1. Petitioner on his returns and respondent in his notice of deficiency continued to refer to Union National as Union Life. ↩
2. In the notice of deficiency it is indicated that petitioner sold his one-half interest in Union Life during 1945.↩
3. In computing the tax, petitioner made a $30 error by showing the difference between adjusted gross income of $18,852.22 and the standard deduction of $500 as being $18,322.22.↩
1. Dobbins paid petitioner brokerage fees for his assistance in securing mortgages from American Life.↩
4. In the notice of deficiency respondent showed in the computation of the deficiency that the return reported a net loss of $23,687.05, which figure was also given by the revenue agent in his testimony. Respondent, however, proposes a finding that petitioner reported on his return a net loss of $20,751.69.↩